IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-01795-MSK

JOHN C. MALONE,

        Plaintiff,

v.

ERIC H. HOLDER, JR.[1], Attorney General of the United States, and
ABC LEGAL SERVICE, INC., d/b/a PROCESS FORWARDING INTERNATIONAL,

        Defendants.

_____

**OPINION AND ORDER ON THE MERITS**
_____

**THIS MATTER** comes before the Court for resolution on the merits of the Plaintiff's claims. The Court has considered the Plaintiff's brief **(# 72,** as amended **# 79)**, the Defendants' response **(# 85)**, and the Plaintiff's reply **(# 87)**, as well as the Administrative Record **(# 62)**.[2]

**FACTS**

The underlying facts in this case are fairly simple and effectively undisputed. On September 12, 2008, the government of the Republic of Chile transmitted a letter rogatory from

---

[1] As have the parties, the Court treats the caption as amended to substitute Mr. Holder, the current U.S. Attorney General, for Mr. Mukasey, the occupant of that office at the time this action was commenced.

[2] There is a dispute between the parties regarding the appropriateness of certain documents tendered by the Plaintiff as a "proposed supplement" **(# 83)** to the Administrative Record. The Court has considered the parties' submissions **(# 86, 88)** on this point and addresses that issue *infra*. The Defendants also filed a Motion to Dismiss **(# 48)** that remains pending, but the arguments therein have been incorporated into the Defendants' merits briefing and the Court will address them in that context, denying the Motion to Dismiss, as moot.

1

the Chilean Antitrust Court to the Defendant Process Forwarding International ("PFI"), the designated agent of the United States Department of Justice[3] ("DOJ") for receipt of such documents directed at U.S. citizens.  The Chilean government requested that the letter, which concerned antitrust proceedings against a Chilean business entity in which the Plaintiff holds a significant business interest, be served upon the Plaintiff so as to effectuate Chilean jurisdiction over him.  The letter specifically requested that it be served pursuant to the Inter-American Convention on Letters Rogatory ("IAC"), which the United States ratified in 1984.  S, Treaty Doc. 98-27, text at http://www.oas.org/juridico/english/treaties/b-36.html.[4]

The Plaintiff commenced this action anticipatorily, before PFI could attempt or complete service of the letter upon him.[5]  The Plaintiff's Amended Complaint **(# 46)** seeks to enjoin PFI from serving him with the letter.  The Plaintiff contends that service under the IAC is not available because the Chilean Antitrust Court proceeding is not a "civil [or] commercial matter" under Article 2 of the IAC (for which service is permitted), but rather, a proceeding "within the jurisdiction of a special court," under Article 16 of the IAC (for which service is not permitted).  Thus, the Plaintiff seeks: (i) a declaration that any attempt by PFI to serve him would constitute DOJ action "not in accordance with law" in violation of the Administrative Procedures Act

---

[3]The parties agree that, through this agency relationship, action by PFI is the equivalent of action by the DOJ.  There being no practical distinctions between the two entities for purposes of this action, this Court refers to PFI and the DOJ interchangeably.

[4]The IAC, done in 1975, has been supplemented by an additional protocol adopted in 1979.  The terms of the additional protocol do not alter the analysis herein.

[5]Indeed, the Plaintiff's Complaint **(# 1)** predates the Chilean letter itself, suggesting that this action was likely premature when it was filed.  Nevertheless, the DOJ has since received the letter and concluded that it should be served by PFI, and thus, the dispute between the parties has sufficiently ripened to avoid the need for dismissal.

("APA"), 5 U.S.C. § 706(2)(A); (ii) that such attempted service would be "in excess of statutory jurisdiction" in violation of the APA, 5 U.S.C. § 706(2)(C); and (iii) a generic declaration that "[a]ny attempt to serve [the] process" embodied by the letter is "not authorized by the IAC."

The parties initially submitted an Administrative Record **(# 62)** consisting simply of the letter rogatory and accompanying exhibits. Thereafter, the Plaintiff submitted his initial merits brief **(# 72)**, arguing: (i) because Article 16 of the IAC allows contracting states to include "contentious administrative" proceedings within the reach of the treaty, but the United States has not done so, an Administrative proceeding cannot fall within the definition of "civil or commercial proceeding" in Article 2; (ii) the terms of the IAC must be interpreted according to the contracting parties' shared understanding, and most of the IAC's signatories and all of its drafting nations are civil law nations in which antitrust proceedings are considered to be administrative, not judicial, in nature; (iii) the Chilean letter expressly requests service pursuant to the IAC, thus preventing the Defendants from relying on any other treaty or procedure to justify service on the Plaintiff; (iv) the Administrative Record reveals no findings or rationale for the DOJ's conclusion that service of the letters is appropriate, and thus, the decision is arbitrary and capricious[6]; (v) the DOJ based its decision on considerations – namely reciprocity and comity – that are inconsistent with the terms of the IAC as ratified by the United States, and thus, reliance on such concerns renders the DOJ's decision arbitrary and capricious[7];(vi) the DOJ

---

[6]In conjunction with this argument, the Plaintiff asserts that the DOJ's rationale for permitting service is reflected in extra-record documents, including an affidavit by a DOJ representative and DOJ responses to certain discovery and FOIA requests by the Plaintiff, and requests that the Administrative Record be supplemented to include these documents.

[7]The phrasing of this argument conceals its actual point, which largely rehashes the argument that because the U.S. did not make the election to permit service of Administrative

3

improperly interpreted the "civil and commercial matters" language of the IAC as being analogous to the meaning of that same phrase in the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, 20 U.S.T. 361, insofar as the existence of Article 16 of the IAC warrants a differential interpretation of the two treaties' terms; (vii) the Court should permit supplementation of the Administrative Record to include material reflecting the DOJ's prior interpretations of the IAC in other cases, as such evidence demonstrates "an agency's change in direction from a previously announced intention"; and (viii) that this case presents suitable grounds for a permanent injunction against attempts to serve the letters at issue on the Plaintiff.

Approximately a week later, the Plaintiff moved **(# 76)** for leave to file an amended opening brief and to further supplement the Administrative Record, citing his receipt of additional FOIA responses from the DOJ reflecting incidents in which documents in other matters either were or were not served by the DOJ under the IAC for various reasons. The Court granted **(# 77)** this motion by a text order that merely directed that the Plaintiff file his amended opening brief as a separate document; the text order did not reference in any way the Plaintiff's request to supplement the Administrative Record. The Plaintiff's amended opening brief **(# 79)** differs from the original version only insofar as it amplifies the argument that the DOJ's current decision differs from the manner in which it has interpreted the IAC in prior matters, making specific reference to several matters not previously addressed in the initial brief. At the same time, the Plaintiff filed an Amended Administrative Record **(# 83)**, containing the additional material.

---

documents under Article 16 of the IAC, it may not serve the Administrative documents tendered here.

The DOJ filed its response brief **(# 85)**, arguing: (i) the IAC vests discretion in the U.S. to construe the terms of the treaty, as well as to determine the character of the inquiry as a "civil or commercial matter" or not, and thus, contrary to the Plaintiff's argument, the Court need not look to the law of Chile to ascertain the character of the letters at issue; (ii) the U.S. has long given a liberal reading to the phrase "civil and commercial matters,"[8] as that phrase is used in the analogous Hague Convention, and records relating to the IAC's ratification in the United States reflect an intention that it be treated as an analogue of the Hague Convention; (iii) as the agency vested with the authority to interpret and apply the IAC, the Court should grant deference to the DOJ's judgment on questions of construction; (iv) that even if the letters at issue here arise in an administrative context governed by Article 16 of the IAC, the treaty only specifies situations in which a nation <u>must</u> serve process, but does not prohibit that nation from agreeing to serve process that is not mandated by operation of the treaty, and indeed, Article 15 of the IAC expressly provides that states may apply more liberal practices than those prescribed by the treaty; (v) the Plaintiff offers no justification for reading Article 16's reference to administrative matters to operate to exclude such matters from Article 2's definition of "civil or commercial matters" if they otherwise fall within that definition; and (vi) the Plaintiff's suit is not within the APA's waiver of sovereign immunity at 5 U.S.C. § 702, and thus, the DOJ is entitled to dismissal of the suit on the grounds of sovereign immunity. Separately, the DOJ opposes **(# 83)** the Plaintiff's request to supplement the Administrative Record.

---

[8]The DOJ's position is essentially that the phrase "civil and commercial matters" excludes only criminal proceedings from its ambit.

5

## ANALYSIS

### A. Standard of review

As presented here, under the APA, this Court may set aside agency action only where it is "arbitrary and capricious" or in excess of the agency's legal authority.  5 U.S.C. § 706(2)(A), (C).  An agency's action is "arbitrary and capricious" if the agency "fails to examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Sorenson Communications, Inc. v. F.C.C.*, 567 F.3d 1215, 1220-21 (10th Cir. 2009).  Alternatively, the agency's decision may be arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Wilderness Workshop v. U.S. Bureau of Land Management*, 531 F.3d 1220, 1224 (10th Cir. 2008).  The agency's action is entitled to a presumption of validity, and the burden is on the party challenging it to establish its arbitrary nature. *Sorenson*, 567 F.3d at 1221.

### B. The IAC

Article 2 of the IAC, which defines the scope of the treaty, reads in pertinent part: "This Convention shall apply to letters rogatory, issued in conjunction with proceedings in civil and commercial matter held before the appropriate judicial and other adjudicatory authority" of a signatory state, including letters seeking to effectuate service of process.  Article 16 supplies a means in which parties can agree to broaden the treaty's scope by "declar[ing] that its provisions cover the execution of letters rogatory in criminal, labor, and 'contentious-Administrative' cases, as well as in arbitrations and other matters within the jurisdiction of special courts," although it

is undisputed that the United States has not made such a declaration.

Article 5 of the IAC sets forth its major operative provision, stating that "Letters rogatory shall be executed in the States Parties provided they meet" certain specified requirements (which are not at issue here). However, Article 17 permits a state to "refuse to execute a letter rogatory that is manifestly contrary to its public policy."

### C. The Plaintiff is not entitled to relief

At the outset, the Court notes that the parties have raised a variety of fascinating legal issues, each of which would itself justify extended consideration and detailed analysis. However, because the Plaintiff's theory is undermined by a defective fundamental premise, the Court need not indulge in the smorgasbord of interesting issues spread before it; rather, the Court limits its discussion to the fatal flaw in the Plaintiff's theory.[9]

The key item of relief sought by the Plaintiff is a permanent injunction prohibiting PFI from ever serving the letter in question upon him. To obtain such sweeping relief, is not enough for the Plaintiff to show that the <u>current</u> rationale for the DOJ's decision to permit service of the letter is unreasonable. So long as there is some reasonable ground for the DOJ to conclude that service is permissible, a successful attack by the Plaintiff on the DOJ's current line of reasoning

---

[9]In doing so, the Court is mindful that the Defendants' invocation of the doctrine of sovereign immunity is a defense going to the jurisidiction of this Court to hear this matter, and normally, should be resolved before the Court proceeds to consider the merits. As discussed *infra*., the Plaintiff has not shown that the DOJ affirmatively lacks the discretion to voluntarily agree to serve letters rogatory received from foreign states, even where those letters do not fully comply with the IAC. This conclusion casts doubt on the Plaintiff's argument that this action even falls within the scope of the APA and its attendant waiver of sovereign immunity. 5 U.S.C. § 701(a)(2) (APA does not apply to "agency action [ ] committed to agency discretion"). Nevertheless, even if this matter falls within a waiver of sovereign immunity, the Court concludes that the Defendants are entitled to judgment on the merits.

offers him only a temporary reprieve while the DOJ reconsiders the matter. Accordingly, for the Plaintiff to obtain the ultimate relief he seeks here, he must show not only that the DOJ's current rationale is defective, but that there is no other reasonable means by which the DOJ could reach the same conclusion. As discussed below, the Court finds that the DOJ's interpretation of the record in this case is not unreasonable, but even if it were, the Court would find that the DOJ could articulate a reasonable basis for authorizing service of the letter on the Plaintiff. Thus, the Plaintiff is not entitled to the permanent injunctive relief he seeks.

From an operative perspective, the IAC contains mandatory language in Article 5, affirmatively requiring that signatories serve any duly issued letters rogatory they receive from other signatories. However, the <u>requirement</u> that a signatory serve a compliant letter does not compel the negative corollary – that a state is <u>prohibited</u> from serving non-compliant letters it receives. The IAC contains no prohibitory language to this effect – *e.g.* directing a state receiving a defective or non-conforming letter rogatory to reject it or take any other specified action. Indeed, it appears to contemplate the contrary, as Article 15 anticipates that parties to the IAC may elect to follow "more favorable practices" than are required by the treaty's terms. Thus, it is not enough for the Plaintiff to show that the letter here did not meet all of the IAC's requirements, such that the DOJ was not <u>required</u> to serve it; he must also show that there is some basis in the record to conclude that the DOJ was <u>prohibited</u> from voluntarily electing to authorize service of a non-IAC-compliant letter rogatory. Perhaps mindful of this broader burden, the Plaintiff argues in his reply brief that because Chile expressly requested that service

of the letters take place "according to the [IAC],"[10] if the letter did not fall within the strict terms of the IAC, the DOJ lacked authority to serve it under any other provision of law. This argument suffers from at least two critical logical flaws.

First, it assumes that the Chilean request expressly and intentionally limited the authority and means by which the DOJ could serve the summons. Such an inference does not arise naturally from the language used in the various components of the letter. Admittedly, the letter requests that the United States "process [the letter] according to [the IAC]"; requests "in conformity with [the IAC]" the "prompt service" of the letter; and the underlying Chilean order states that "the processing" of the letter "shall abide by" the IAC. However, in context, this Court construes those phrases as simply reflecting generalized understandings, as filtered through the peculiarly stilted argot of international diplomacy[11] (not to mention incidental changes in tone and meaning accompanying translations across languages), rather than limited, specific directives intended to narrow the authority and discretion of the DOJ in effecting service. One would naturally expect that, if Chile had a particular need or desire to require that

---

[10] To be precise, the cover letter from the Chilean government states "The Embassy of Chile would appreciate if PFI would process the attached Letter Rogatory according to the Inter American Convention on Letter Rogatory . . . ." The letter itself states "The Central Authority signing this letter rogatory has the honor to transmit to you in triplicate the documents listed below and, in conformity with the Protocol to the Inter-American Convention on Letters Rogatory . . . requests their prompt service." Although the format is difficult to parse, the underlying order attached to the letter appears to contain a provision, signed by a Deputy Prosecutor in the Supreme Court of Justice, that indicates that "The processing of this letter rogatory shall abide by the provisions in section 21 [of Chile's Civil Procedure Code] and the provisions of the [IAC]." *Docket # 62 at 34-35.*

[11] For example, one might reasonably assume that Chile believed that its letter strictly complied with the IAC, and thus, it understood that the DOJ was <u>compelled</u> by Article 5 of the IAC to effect its service. In essence, then, the language quoted above was intended to convey the message "please carry out the task that we believe you are legally required to perform."

service either take place under the strict terms of the IAC or not at all, it would have expressed that intention (and the grounds therefor[12]) in concrete terms. Moreover, one would expect that Chile would have provided instructions for how the DOJ should proceed if it concluded that service under the IAC was not permitted. Yet no such indicia of such intent to limit the authority or means of service are found in the letter. The various references to the IAC can be understood to reflect Chile's expectation that that treaty created a legal obligation for the DOJ to act and to advise the DOJ that Chile was invoking the IAC to that extent, but in the absence of clearer evidence of a simultaneous intent to restrict the DOJ's ability to resort to any other alternative means of justifying the service, the Court will not read the letter to strip the DOJ of such discretion.[13] *See e.g. Kreimerman v. Casa Veerkamp, S.A.*, 22 F.3d 634, 640, 644 (5th Cir. 1994) (IAC does not preempt all other available means for serving international process); *Hein v. Curprum, S.A.*, 136 F.Supp.2d 63, 70 (N.D.N.Y. 2001) (same).

Second, and more importantly, the Plaintiff mistakenly assumes that, if the IAC does not compel the DOJ to serve the letter, the DOJ's decision[14] to nevertheless do so voluntarily does

---

[12]Indeed, an affidavit by a DOJ official (sought to be added to the Administrative Record by the Plaintiff) recites a conversation with Chilean embassy personnel who emphasized that the letter embodied "an urgent matter for Chilean authorities." In the absence of some indication that, for example, the Chilean court would lack jurisdiction over the Plaintiff if the summons was not served under the particular rules of the IAC it is logical to assume that the Chilean court would want its summons in this "urgent" matter to be served in any lawful way.

[13]The Plaintiff does not argue that no other source of law would permit service of the letter upon him. He argues that "the DOJ has not identified what alternate basis for execution" of the letter exists, but as noted above, the DOJ's decision enjoys a presumption of correctness and the burden is on the Plaintiff to demonstrate that no legal authority, under the IAC or otherwise, would permit the DOJ to direct service of the letter upon him.

[14]The Plaintiff is correct insofar as he contends that the original Administrative Record at Docket # 62 contains no indication of a decision (and thus no explication of such decision) by the DOJ regarding whether the letters would be served on him. In this respect, it is appropriate

not constitute service "according to the IAC." As discussed above, the IAC compels service when appropriate criteria are met, but Article 15 authorizes signatories to engage in "more favorable practices" than the IAC requires.[15] Article 15 operates as "affirmative permission for signatory states" to "unilaterally" afford more favorable treatment to a request than is mandated by the IAC. *Id.* at 641. Conceivably, these "more favorable practices" might entail forgiving technical errors or omissions in a request for service under the IAC, and treating the defective letters as conforming, thus warranting required service under Article 5. Here, even if the DOJ had concluded that the letters at issue did not relate to a "civil or commercial action" under Article 2, Article 15 nevertheless authorizes it to overlook that defect and unilaterally elect to treat the letter as IAC-compliant and direct that it be served under the treaty's provisions.[16]

---

to grant the Plaintiff's request to supplement the record, at least insofar as he seeks to include the affidavit of Robert Hollis, which explains the DOJ's decision and the reasons therefor. Because the Court does not reach the issues underlying the remainder of the Plaintiff's request to supplement the record, the Court denies the remainder of the motion to supplement, as moot.

[15]The phrase "more favorable practices" is not clarified in the IAC, and even caselaw specifically interpreting Article 15 does not purport to ascribe a gloss to this phrase. *See e.g. Kreimerman*, 22 F.3d at 641-42. To this Court, the plain meaning of the phrase "more favorable practices" refers to "practices" – that is, actions taken by signatories to the IAC in response to a letter rogatory – that are "more favorable" to the nation issuing the letter than would be required by the IAC. Interpreting Article 15 to grant discretion to signatories to engage in conduct "more favorable" towards recipients of letters than is required by the IAC would eviscerate the purpose of the treaty and would render the need for Article 17 entirely superfluous.

[16]One might analogize the discretion conferred on the DOJ by Article 15 to the discretion contracting party A has when the other contracting party, B, tenders a performance not in compliance with the contract's terms. It is hornbook law that in such circumstances, A has the option to overlook the defect and treat the performance as sufficient, thereby incurring his own duty to perform according to the terms of the agreement.

The Plaintiff's theory here would appear to suggest that in such circumstances, if A (*i.e.* the DOJ) forgives the defect in B's performance and goes on to perform his own obligations (*i.e.* by serving the letter), such performance necessarily arises outside of the terms of the parties' contract (*i.e.* that such service is not "according to the IAC").

11

Thus, the Court finds no merit in the Plaintiff's argument that the Chilean authorities <u>insisted</u> that the service take place either with strict adherence to the IAC's terms or not at all. Nor does the Court find merit in the Plaintiff's contention that the DOJ could direct service of the letters "according to the IAC" only if it found the letters to fully comply with the strictest possible construction of all of the IAC's provisions. As a result, the Plaintiff lacks any meritorious opposition to the notion that the DOJ <u>could</u> reasonably authorize service of the letter, even if the Plaintiff is actually correct that the letter indeed involves administrative matters and that the effect of Article 16 is to thus relieve the DOJ from any <u>requirement</u> to serve it.

In any event, the Court also does not find that the DOJ's <u>actual</u> reason for its decision contravenes the standards of the APA. The DOJ's determination, as reflected in Mr. Hollis' affidavit, is simply that the letters "should be served pursuant to [the IAC]." Mr. Hollis' articulation of the DOJ's rationale does not elaborate further on the DOJ's reasoning, nor does it respond to the particular arguments raised by the Plaintiff here. There is no reason for the Court to assume that the DOJ's reasoning necessarily followed the same logic as that underlying the Plaintiff's arguments – *i.e.* that the DOJ analyzed the interplay between Article 16 and Article 2. In fact, Mr. Hollis' affidavit indicates that "in exercising [its] discretion," the DOJ considered not only the language of the IAC, but also "the interest of the United States to accommodate requests . . . to the greatest extent possible and appropriate." In other words, Mr. Hollis' affidavit suggests that even if the DOJ may have concluded that although it was not <u>required</u> to serve the letter under Article 5 of the IAC, concerns of comity[17] warranted the DOJ exercising its

---

[17]As alluded to in n. 7, *supra*., the Plaintiff may be correct that considerations of comity may be inappropriate in determining whether a letter rogatory technically complies with the IAC, but nothing suggests that the DOJ may not take such considerations into account when

discretion to forgive any technical defects with the letter and voluntarily[18] direct its service. For the reasons discussed above, the Court cannot say that such a discretionary decision by the DOJ was arbitrary and capricious or in excess of the authority conferred upon it.

## CONCLUSION

Accordingly, the DOJ is entitled to judgment in its favor on all claims in this case, and such judgment will enter contemporaneously with this Order. The Defendant's Motion to Dismiss **(# 48)** is **DENIED, AS MOOT**.

Dated this 28th day of September, 2009

**BY THE COURT:**

*Marcia S. Krieger*

Marcia S. Krieger
United States District Judge

---

exercising its discretion to overlook defects and serve the letter as a matter of courtesy, rather than obligation.

[18]The Court observes that the DOJ has no obligation to construe the IAC narrowly for the Plaintiff's benefit, nor is it required to refrain from exercising its discretion in ways that may be detrimental to the Plaintiff's interest. The DOJ does not act as the Plaintiff's fiduciary, and is not required to aid the Plaintiff's efforts to evade process in a Chilean proceeding.